IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PARTNER ASSESSMENT CORPORATION | § § § § | Case No. 4:23-cv-2768 |
| Plaintiff, | § § | |
| vs. | § § | |
| PCR REAL ESTATE HOLDING COMPANY, LLC | § § § | |
| Defendant. | § § § | |
| | § | Jury Trial Requested |
| | § § § § | |

**COMPLAINT**

Plaintiff Partner Assessment Corporation d/b/a Partner Engineering and Science, Inc., d/b/a Partner (collectively, "Plaintiff" or "Partner"), by and through its undersigned attorneys, brings this action against Defendant PCR Real Estate Holding Company, LLC d/b/a Partners, d/b/a Partners Real Estate, d/b/a Partners Capital, d/b/a Partners Development, d/b/a Partners Finance, d/b/a NAI Partners, and d/b/a NAI Holding Company  (collectively, "PCR" or "Defendant"), and alleges, on personal knowledge as to its own actions and on information and belief to the actions of others, as follows:

**NATURE OF ACTION**

1.   This case involves the willful infringement of the well-established and globally recognized PARTNER trademark by Plaintiff Partner's former customer, PCR. Partner began using its PARTNER trademark in 2007 in connection with various commercial real estate services. PCR

knew of Partner's widespread use of its PARTNER family of trademarks and tradenames since at least 2016, when PCR became a customer of Partner. The PARTNER U.S. trademarks include: (1) PARTNER; (2) PARTNER ASSESSMENT CORPORATION; (3) PARTNER ENERGY; (4) PARTNER ENGINEERING AND SCIENCE; (5) PARTNER SITELYNX TECHNOLOGY; and (6) PARTNER VALUATION ADVISORS. Partner also uses the mark PARTNER PROPERTY CONSULTANTS and PARTNER ENGINEERING & SCIENCE internationally. (Collectively, these trademarks will be referred to as the "PARTNER Marks").

2.   Nonetheless, PCR elected to adopt the nearly identical and confusingly similar mark PARTNERS for its own services in the commercial real estate industry, knowing that those services overlap both geographically and with respect to the customers to whom Partner's services are delivered. After efforts to resolve this matter amicably were rebuffed, Partner now brings this action against PCR to stop its blatant and willful infringement of the PARTNER Marks.

3.   Partner, along with its subsidiaries and affiliates, is an internationally recognized provider of a comprehensive range of services to customers in the commercial real estate industry, including *inter alia*, civil, structural and geotechnical engineering; property valuation services; environmental site assessments and remediation; construction progress management; funds control; ALTA surveys and survey coordination; energy consulting services; property assessments; and project implementation support services, among others (collectively, the "Partner CRE Services"). Partner is widely known for helping its clients throughout the entire life cycle of a commercial real estate asset, assisting customers with managing risk, making smart investments, maximizing the performance of their assets, and generally executing successful real estate investment strategies.

4.    Founded in 2007 in Torrance, California, Partner quickly established a national presence. Partner began offering services in Texas in or around 2008, and then opened its first Texas-based office in Plano just a few years later in 2012. Today, Partner has three (3) physical offices located in Texas in Plano, Houston, and Austin, where it employs more than 140 Texas residents (representing more than 10% of its global workforce). Since 2007, Partner has expanded nationally and internationally and today has 50 offices globally, with 44 of those offices located in the United States. Partner also employs nearly 1,250 individuals worldwide, the vast majority of whom are based in the US.

5.    Partner's global team of multidisciplinary experts includes a variety of service providers including credentialed architects, engineers, scientists, escrow officers, surveyors, archeologists, appraisers, and many other specialists who advise on commercial real estate projects ranging from a single building system to a large global portfolio of properties.

6.    Partner has continuously used its PARTNER Marks since 2007 to signify the source of its extensive commercial real estate consulting services. From inception, Partner emphasized the PARTNER Marks in all of its branding, prominently using PARTNER as a standalone mark to signify to consumers the unity between the vast array of the Partner Family of companies and the Partner CRE Services. PARTNER is used as the most prominent element displayed in Plaintiff's family of logos, on its website and signage, emblazoned on the side of its office buildings and company trucks, embroidered on employees' work apparel, and, notably, appearing on the various reports prepared for its Partner's customers (which, as further described herein, included Defendant). The PARTNER Marks have also been utilized as the dominant element of its family of marks denoting specific branches of the Partner family of companies. Partner has also utilized

"Partner" as part of its tradename for its principal company and subsidiaries and affiliates over the years including its most recent venture, Partner Valuation Advisors, LLC.

7.   As a result of Partner's expenditures and efforts over the last fifteen (15) years, the PARTNER Marks have come to signify Partner's high quality commercial real estate consulting services to consumers in Texas, the United States, and across the globe.

8.   In or around 2016, Defendant PCR, a commercial real estate broker and investment firm located in Texas, began doing business with Partner. At the time, PCR used the tradename and trademark "NAI Partners," using "NAI" as the dominant portion of the mark. PCR continued to be a client of Partner until late 2022, hiring Partner to handle more than 15 projects for Defendant. In the fall of 2022, nearly 15 years after Partner first used its PARTNER Marks in the United States and a decade since its use began in Texas, Defendant rebranded itself and began using the infringing trademark PARTNERS in connection with commercial real estate consulting services highly similar (if not identical) to those offered by Partner. Defendant launched this use in a highly publicized rebranding campaign and has since applied the new infringing PARTNERS mark to a number of its divisions, thereby mimicking Partner's use of its PARTNER Marks for its Partner CRE Services.

9.   Defendant's use of the infringing PARTNERS trademark in this manner has caused and will continue to cause confusion with Partner's long-standing PARTNER Marks. Not only are the parties' trademarks nearly identical, but also the parties overlap geographically, since both companies not only do business in Texas, but also have physical offices in Houston, Austin and the Dallas/Fort Worth area. In addition, both offer identical and/or highly related services, share marketing and trade channels, provide services to an overlapping body of customers, and target the same prospective customers.

10. Shortly after learning of the launch of Defendant's infringing PARTNERS brand, and in light of the long-standing business relationship between the parties, Plaintiff's Chief Executive Officer contacted Defendant's Chief Operating Officer to notify Defendant of this likelihood of confusion and to try to amicably resolve this dispute. Such overtures were rejected.

11. Thereafter, Plaintiff's in house counsel issued a formal cease-and-desist letter, followed by phone calls and emails, to Defendant's outside counsel. Nonetheless, after additional communications between counsel for the parties, Defendant steadfastly refused to change course and continues its unauthorized use of the infringing PARTNERS trademark to this day.

12. Defendant's willful infringement of the PARTNER Marks have caused, and will continue to cause, confusion and deception in the marketplace, creating the false impression that Defendant is connected or otherwise sponsored by, affiliated with, or related to Partner. Partner has thus suffered and continues to suffer irreparable harm.

13. Partner now brings this action against Defendant for injunctive relief and monetary damages, including enhanced damages for its willful trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a); and for related claims under the common law of the State of Texas.

**PARTIES**

14. Plaintiff Partner Assessment Corporation d/b/a Partner Engineering and Science, Inc. d/b/a Partner is a California corporation with its principal place of business at 2154 Torrance Blvd, Torrance, California 90501. Partner offers its services under its PARTNER Marks through various subsidiaries and affiliates that use the PARTNER mark in their trade name, including Partner Valuation Advisors; Partner Energy; Partner Engineering North Carolina; Partner Engineering &

Geology DPC; Partner Properties; and Partner SiteLynx Technology. Partner operates internationally in various European countries under its PARTNER mark as well, namely Partner Property Consultants and Partner Engineering & Science. (Partner and all the foregoing subsidiaries and affiliates will be referred to collectively herein as the "Partner Family.")

15. Upon information and belief, Defendant PCR Real Estate Holding Company, LLC d/b/a Partners, d/b/a Partners Real Estate, d/b/a Partners Capital, d/b/a Partners Development, d/b/a Partners Finance, d/b/a NAI Partners, and d/b/a NAI Holding Company is a Texas limited liability company with its principal place of business at 1360 Post Oak Blvd, Suite 1900, Houston, Texas 77056. Upon information and belief, Defendant may be served through its registered agent in Texas, Jon Silberman, at 1360 Post Oak Blvd, Suite 1900, Houston, Texas 77056.

### JURISDICTION AND VENUE

16. This Court possesses original subject matter jurisdiction over this action pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq*., and 28 U.S.C. §§ 1331 and 1338(a).

17. This action also alleges trademark infringement, unfair competition and unjust enrichment under the common laws of the state of Texas. The Texas state law claims share a common nucleus of operative facts with the federal law claims. Accordingly, this Court possesses supplemental jurisdiction over Partner's state law claims under 28 U.S.C. § 1367.

18. The Court has personal jurisdiction over Defendant, which is headquartered in Houston, Texas, and has engaged in "doing business" in Texas and in this Judicial District, including committing trademark infringement in whole or in part in this Judicial District and in Texas pursuant to Texas Civil Practice & Remedies Code § 17.042.

19. Venue is proper in this Court under 28 U.S.C. § 1391(b), (c), and (d). A substantial part of the events or omissions giving rise to the claims described below occurred in this Judicial District. Furthermore, Defendant's principal place of business is in this Judicial District.

## FACTUAL BACKGROUND

### Partner's Business, Services, and Reputation

20. Since it was initially established in 2007 as a provider of commercial real estate engineering and assessment services, Partner has substantially expanded and diversified its portfolio of services offered under the PARTNER Marks. As previously set forth, the Partner Family of companies offers a wide range of services to customers in the commercial real estate industry, the Partner CRE Services, and for years has been considered a "one-stop-shop" for its commercial real estate customers. Partner has adopted a holistic full-service approach whereby it can assist its customers across the full life cycle of a commercial real estate asset.

21. Partner's expansion of its services to include commercial real estate valuation and appraisal services, offered through affiliate company Partner Valuation Advisors, LLC ("Partner Valuation"), is within the natural zone of expansion of the commercial real estate consulting services already offered under the PARTNER Marks.

22. As a result of its high-quality work and stellar reputation, Partner has been the recipient of several prestigious awards over the years. For example, Partner has been named on the Engineering News-Record Top 500 Design Firms list for the last ten years, most recently moving up to the 95th spot. Partner has also ranked several times in the top ten of Zweig Group's Top 100 Hot Firm List,

which recognizes the fastest-growing architecture, engineering, planning, and environmental consulting firms in the United States.[1]

23. Many of Partner's employees and leaders have also been recognized by their peers in the commercial real estate industry for their achievements. For example, Partner's CEO was recently interviewed by Forbes, along with two other peers, about ESG initiatives in the commercial real estate industry, referring to Partner as "[t]he top consulting firm helping CRE firms improve asset performance through engineering, energy, and environmental services."[2]

24. As another example, two Partner employees recently received the Connect CRE 2020 Next Generation Award, which recognizes up-and-coming influential leaders in the commercial real estate industry.[3] In addition, a Partner employee in the Dallas Office was selected for Connect Media's 2019 Women in Real Estate Award representing the Texas/Gulf region.

25. As a result of Partner's diverse services portfolio, the efforts of its 1250 dedicated team members who are leaders in the industry, and the company's overall commitment to excellence, Partner has developed a strong reputation and significant goodwill as a high-quality provider of a broad range of services to customers in the commercial real estate industry, servicing thousands of clients across the United States (and the globe), including in Texas.

### Partner's Trademarks and Tradenames

26. Since 2007, Partner has used "PARTNER" as the dominant element of its brand in connection with the Partner CRE Services, including in its PARTNER mark (using "PARTNER" as a standalone mark without any accompanying words/elements). As noted above, Partner's

---

[1] Attached as Exhibit A are true and correct copies of articles from Partner's website describing Partner's awards.
[2] Attached as Exhibit B is a true and correct copy of the Forbes article.
[3] Attached as Exhibit C is a true and correct copy of an article from Partner's website discussing Connect CRE 2020 Next Generation Award.

family of U.S. trademarks also includes PARTNER ASSESSMENT CORPORATION, PARTNER ENERGY, PARTNER ENGINEERING AND SCIENCE, PARTNER SITELYNX TECHNOLOGY, and PARTNER VALUATION ADVISORS.

27.  Partner and its affiliate company, Partner Valuation Advisors ("PVA"), have entered into a licensing agreement allowing PVA to use the PARTNER VALUATION ADVISORS mark in connection with providing valuation services to customers in the commercial real estate industry.

28. Partner also uses the element "Partner" in the tradenames for numerous of its subsidiaries and affiliated companies (as demonstrated in n.2) for use in connection with offering and provision of the Partner CRE Services

29. Partner is the owner of and/or has filed the following registrations and applications with the United States Patent and Trademark Office ("USPTO") for the PARTNER Marks for use in connection with its wide array of services, described in full at Exhibit D:[4]

- PARTNER (Ser. No. 97689228), for use in connection with various commercial real estate services, including but not limited to, business consulting, appraisal, valuation and building consultancy services;

- PARTNER VALUATION ADVISORS (Ser. No. 97537190), for use in connection with various commercial real estate services, including but not limited to appraisal and financial consultation services;

- PARTNER ASSESSMENT CORPORATION (Reg. No. 5353012), for use in connection with various commercial real estate services, including but not limited to, engineering and environmental consulting services;

- PARTNER ENGINEERING AND SCIENCE (Reg. No. 6096008), for use in connection with engineering and building assessment services; and

- PARTNER ENGINEERING AND SCIENCE INC. (Reg. No. 5254071) for use in connection with various commercial real estate services, including but not limited to, for use in connection with engineering and building assessment services.

---

[4] Attached as Exhibit D are true and correct copies of Plaintiff's applications and registrations as retrieved from the USPTO's Trademark Status & Document Retrieval ("TSDR") site.

30. Plaintiff uses a distinctive stylized version of its overarching PARTNER mark, and has used this, or a substantially similar, stylized design continuously in connection with the Partner CRE Services since its 2007 formation (the "Partner Logo"):

**PARTNER**

31. To ensure consistent brand recognition across all its service offerings, Plaintiff also prominently features "PARTNER" as the dominant element in the stylized company logos, including in each of the Partner Family companies shown below. Each logo design incorporates the same colors and typeface as is used in the primary Partner Logo, with the unique portion specific to each Partner Family company included in smaller letters below the PARTNER element of the design (the "Partner Family Logos"):








32. As a result, each Partner Family Logo signifies the unique identity and services of the respective Partner Family company, while emphasizing the company's relationship to the overarching PARTNER brand. For example, the below logo design incorporates various members of the Partner Family into one logo, with PARTNER serving as the dominant element of the mark, unifying the brand. Additionally, Partner uses its PARTNER mark in different color schemes, depending on the background behind the mark, and the "P" element is used alone in connection

with various of Partner's social media accounts, all signifying the source of the Partner CRE Services.

  

33. Over the years, Partner has invested significant time and money in brand development, marketing, and advertising. As a result, the PARTNER Marks have come to signify Partner's (and the Partner Family's) high-quality reputation for its panoply of services in the commercial real estate industry, and the PARTNER Marks have acquired incalculable distinction, brand recognition, and goodwill belonging exclusively to Partner.

**Background of Defendant's Business**

34. Upon information and belief, Defendant is a Texas based company that offers commercial real estate brokage, investment, and development services.

35. Upon information and belief, Defendant currently has offices in Houston, TX; San Antonio, TX Austin, TX; and Dallas, TX.

36. Upon information and belief, Defendant (or a predecessor entity) had been affiliated with NAI Global, a commercial real estate brokerage firm, since 1998.

37. Upon information and belief, for a number of years prior to 2014, Defendant's affiliated or predecessor entities, Partners Commercial Realty P.C. and Partners Commercial Realty, L.C., operated under various tradenames and trademarks that included the term "NAI", such as NAI HOUSTON and NAI PARTNERS COMMERCE.

38. Upon information and belief, since at least 2015, Defendant conducted business under the tradename and trademark NAI PARTNERS, offering brokerage, investment, and property management services in the commercial real estate industry.

39. Upon information and belief, since at least 2014, Defendant also offered real estate investment services under the trademark NAI HOLDING COMPANY.

40. Throughout the time that Defendant (or its predecessors) used the "NAI" element as part of their tradename and trademark, "NAI" was the dominant portion of the name and mark, as depicted in these logos:




41. When used with the term "NAI", the term "PARTNERS" merely served as a descriptive or generic term, indicating Defendant's affiliation with the company NAI Global, or otherwise suggesting a "partnership" (similar to the use of "company" or "corporation" as the last word in a mark).

**<u>Defendant's Customer Relationship with Partner</u>**

42.  In 2016, Defendant—then known as NAI PARTNERS—first hired Partner to provide it with commercial real estate industry services in Texas. Specifically, Defendant hired Partner, including a project manager located in one of Partner's Texas offices, to perform a property condition assessment and provide Defendant with a Property Condition Report (on which the PARTNER Mark was prominently displayed) for one of Defendant's real estate properties.

43. Over the next six (6) years, Defendant hired Partner to perform more than 15 additional projects, including additional property condition reports and environmental site assessment and zoning reports.

44. Until Defendant's September 2022 announcement of its rebrand, PCR had, upon information and belief, operated under the NAI PARTNERS mark for the entirety of Plaintiff's and Defendant's business relationship.

### Defendant Officially Rebrands as "Partners" in 2022

45. Upon information and belief, on or about September 7, 2022, Defendant formally announced, including via a press release posted on its website,[5] as well as on its Facebook page (in a post that included an animated slide deck and a link to the press release),[6] that it had elected to discontinue its affiliation with NAI Global and that it had renamed and rebranded itself from NAI PARTNERS to simply PARTNERS.

46. Upon information and belief, at that time, Defendant also officially "unveiled" its new logo, depicted here:

**partners**

47. Upon information and belief, PCR's announcement and re-branding was also the subject of numerous news articles.[7]  In connection with the announcement, PCR also announced its intention to begin delivering services outside of Texas for the very first time, specifically to expand its geographic reach to other markets, including Tennessee, North Carolina, Colorado, Georgia, and Arizona.

48. Upon information and belief, Defendant ceased its use of the NAI PARTNERS Mark after this announcement and began to solely use the infringing PARTNERS word mark and

---

[5] A true and correct copy of the press release posted on PCR's website is attached hereto as Exhibit E.

[6] A true and correct copy of PCR's Facebook announcement and related posts are attached hereto as Exhibit F.

[7] A true and correct example of one of these articles is attached hereto as Exhibit G.

PARTNERS logo design in connection with its commercial real estate services, specifically, brokerage, investment, valuation, and property management services.

49. Unbeknownst to Plaintiff, Defendant had filed two (2) trademark applications[8] ("Defendant's Applications") on July 4, 2022, shortly before its rebranding to PARTNERS and while still operating under the tradename NAI PARTNERS, which are pending with the United States Patent and Trademark Office ("USPTO"), for marks that incorporate the infringing PARTNERS trademark, namely:

- PARTNERS CAPITAL, Application Serial No. 97/487,840, for use in connection with "real estate investment services"; and

- PARTNERS REAL ESTATE COMPANY, Serial No. 97/487,835, for use in connection with "real estate services including, but not limited to, investment, brokerage and commercial property management services."

(Defendant's Applications, along with its PARTNERS mark and logo, and any other similarly confusing uses of PARTNERS by Defendant, are collectively referred to as the "Infringing Marks"). Upon information and belief, Defendant has not yet filed a federal trademark application for either the PARTNERS word mark or design logo.

50. On the same day that PCR filed Defendant's Applications, PCR also filed an application for the mark NAI PARTNERS, Serial No. 97/487,840, for "real estate services, namely, rental, brokerage, leasing and management of commercial property, offices and office space," claiming a first use date of May 31, 2015.

---

[8] Attached as Exhibit H are true and correct copies of the application records for Defendant's Applications as retrieved from the USPTO's Trademark Status & Document Retrieval ("TSDR") site.

51. Defendant's application for the mark PARTNERS CAPITAL claims a date of first use of October 31, 2020. Partner's senior management did not become aware of Defendant's alleged use of this mark prior to conducting diligence in connection with the filing of this complaint.

52. Defendant's application for the mark PARTNERS REAL ESTATE COMPANY claims a date of first use of June 20, 2021. Partner's senior management did not become aware of Defendant's alleged use of this mark prior to conducting diligence in connection with the filing of this complaint.

53. Upon information and belief, subsequent to its 2022 rebranding, PCR also began using the PARTNERS stylized design logo as the dominant portion of logos for PCR's Partners Capital and Partners Real Estate businesses or "platforms" as it refers to them, as shown below:







**LIKELIHOOD OF CONFUSION BETWEEN THE PARTIES' MARKS**

54. Defendant's use of the Infringing Marks in connection with its commercial real estate services is likely to cause confusion among customers and it infringes on Partner's rights in the PARTNER Marks.

55. Defendant's use of the Infringing Marks is likely to create confusion among customers due to the strong similarities between the visual appearance, pronunciation, and perceived meaning of each party's marks.

- 15 -

56. Plaintiff's PARTNER mark is wholly subsumed within the Infringing Marks, and the words are nearly identical. When using the possessive form of Plaintiff's company name, "Partner's," the pronunciation is identical to that of the Defendant's PARTNERS mark.

57. The likelihood of confusion with Plaintiff's PARTNER Marks is also exacerbated by the fact that Defendant also uses "PARTNERS" as the dominant element in each of the Infringing Marks, mimicking Plaintiff's use of the element PARTNER in its family of PARTNER Marks. Upon information and belief, Defendant did not use the Infringing Marks in this manner until Defendant's rebranding in 2022, more than fifteen (15) years after Plaintiff's use of the PARTNER Marks began in the United States.

58. Defendants' unauthorized use of the Infringing Marks is also likely to cause consumer confusion, including because Defendant is using the Infringing Marks in connection with commercial real estate brokerage, management, valuation, and investment services, which are identical and/or overlap with Partner's commercial real estate services, and/or within Partner's natural zone of expansion.

59. Specifically, Defendant's services are closely related to and/or complimentary to Partner's portfolio of commercial real estate services, with both parties' services falling within the commercial real estate field.

60. Defendant's services are also strongly interconnected with Partner's appraisal and valuations services, which Partner offers across the country, including in the state of Texas, through its affiliated company and licensee, Partner Valuation Advisors. Indeed, one of Defendant's advertised "platforms" is Partners Valuation Advisory, a name that is virtually identical to the PARTNER VALUATION ADVISORS mark used by PVA.

61. Particularly given that Partner has historically expanded to increase the scope of the services it offers under the PARTNER Marks to other services within the commercial real estate industry, and Partner's overall strong brand recognition within the commercial real estate industry, Defendant's services that may not entirely overlap with the Partner CRE Services, at a minimum, fall squarely within Partner's natural zone of expansion.

62. Defendant also advertises, promotes, and offers its services under the Infringing Marks to a group of consumers that are highly related to, if not entirely overlapping with, Partner's consumer base in the commercial real estate industry. Defendant's activities throughout the state of Texas, where Partner has three well-established offices and numerous customers, are almost certain to lead to confusion.

63. The likelihood of confusion is also increased by Defendant's stated intention to expand its commercial real estate services outside of Texas for the first time and into geographical areas historically served by Plaintiff, including Georgia, Tennessee, North Carolina, Colorado, and Arizona. In fact, with the exception of Tennessee, Plaintiff has physical offices located in each of these states.

**Partner's Efforts to Stop Defendant's Willful Infringement**

64. In September 2022, immediately upon discovering that Defendant had adopted its confusingly similar Infringing Mark for use as its main brand in connection with commercial real estate services, and in an effort to amicably resolve this matter due to the long-standing business relationship between the parties, Partner's Chief Executive Officer reached out to Defendant's

Chief Operating Officer to request that Defendant cease and desist from all uses of the Infringing Mark.

65. In discussions over a period of several weeks, Partner's Chief Executive Officer discussed Defendant's use of the Infringing Mark with Defendant's Chief Operating Officer, explaining that it infringed on Partner's prior rights in its PARTNER Marks, and highlighting the great likelihood of consumer confusion and the potential harm to *both* companies' brands.

66. Notwithstanding these efforts, Defendant continued its willful use of the Infringing Mark in connection with its commercial real estate services and, in early January 2023, its management finally confirmed that it would not change its mark.

67. On January 12, 2023, in house counsel for Partner sent a formal cease-and-desist letter[9] to counsel for Defendant demanding that Defendant immediately cease and desist all uses of the Infringing Mark.

68. On February 3, 2023, Defendant, through counsel, replied to the cease and desist letter, refusing to cease its use of certain of the Infringing Marks.[10]

69. Further discussions ensued between counsel, but Defendant recalcitrantly refused to abandon the Infringing Marks, even claiming it had prior use rights in the Infringing Marks.

70. Upon information and belief Defendant had not used the Infringing Marks prior to 2007 and any such alleged use by a predecessor to Defendant (which, upon information and belief, cannot be relied upon by Defendant) had been abandoned long ago, and certainly prior to Partner's good faith adoption and use of the PARTNER Marks.

---

[9] Attached as Exhibit I is a true and correct copy of Partner's cease-and-desist letter to Defendant.
[10] Attached as Exhibit J is a true and correct copy of PCR's response to Partner's cease-and-desist letter.

71. Upon information and belief, Defendant continues to use the Infringing Marks to this day in connection with providing services in the commercial real estate industry that are identical to and/or highly related to Partner's services and well within Partner's natural zone of expansion.

72. Upon information and belief, Defendant also continues to market and provide its services under the Infringing Marks in trade channels in Texas that are identical to and overlapping with Partner's, and to the same or overlapping target audience of consumers and prospective consumers in Texas.

73. Upon information and belief, Defendant's conduct alleged herein has caused and/or is likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of Defendant's services.

74. Upon information and belief, Defendant's conduct alleged herein falsely indicates to the purchasing public that Defendant is in some manner connected with, sponsored by, affiliated with, or related to Partner and/or a Partner Family company when it is not.

75. Upon information and belief, Defendant's conduct alleged herein represents Defendant's intentional and willful intent to trade upon Partner's substantial goodwill in its PARTNER Marks.

76. Upon information and belief, Defendant's unauthorized use of the Infringing Marks constitutes an invasion of Partner's valuable property rights in a manner that unjustly enriches Defendant.

77. Defendant's infringing acts, as alleged herein, are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Partner and to its valuable reputation and goodwill with the consuming public for which Partner has no adequate remedy at law.

78. This action is brought to prevent any further infringement of Partner's intellectual property rights under federal and Texas law and to compensate Partner for the harm caused by Defendant's willful actions.

**COUNT I**
**Federal Trademark Infringement in Violation of**
**Section 32 of the Lanham Act**

79. Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

80. Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to cause confusion or mistake or to deceive consumers as to the origin, source, sponsorship and/or affiliation of Defendant's services, and is likely to cause consumers to believe, contrary to the fact, that Defendant's services are offered, authorized, endorsed or sponsored by Partner, and/or that Defendant is in some way affiliated with or sponsored by Partner and/or the Partner Family. Defendant's conduct therefore constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

81. Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Partner's prior rights in its PARTNER Marks and with the willful intent to cause confusion and trade on Partner's goodwill.

82. As a direct and proximate result of Defendant's infringing and unlawful acts, Partner has suffered and will continue to suffer damages in an amount to be established at trial.

83. Unless enjoined by this Court, Defendant's infringing and unlawful acts will continue to cause Partner to suffer immediate and irreparable harm for which Partner has no adequate remedy at law.

<u>**COUNT II**</u>
**Unfair Competition and False Designation of Origin in**
**Violation of Section 43(a) of the Lanham Act**

84. Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

85. Partner has valid and legally protectable marks and is the senior user of the PARTNER Marks.

86. Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to cause confusion or mistake or to deceive consumers as to the origin, source, sponsorship and/or affiliation of Defendant's services, and is likely to cause consumers to believe, contrary to the fact, that Defendant's services are offered, authorized, endorsed or sponsored by Partner, and/or that Defendant is in some way affiliated with or sponsored by Partner and/or the Partner Family. Defendant's conduct therefore constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

87. Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Partner's prior rights in its PARTNER Marks and with the willful intent to cause confusion and trade on Partner's goodwill.

88. As a direct and proximate result of Defendant's infringing and unlawful acts, Partner has suffered and will continue to suffer damages in an amount to be established at trial.

89. Unless enjoined by this Court, Defendant's infringing and unlawful acts will continue to cause Partner to suffer immediate and irreparable harm for which Partner has no adequate remedy at law.

- 21 -

## <u>COUNT III</u>
## Trademark Infringement Under Texas Common Law

90.   Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

91. Plaintiff has valid and legally protectable marks and is the senior user of the PARTNER Marks.

92. Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to cause confusion or mistake or to deceive consumers as to the origin, source, sponsorship and/or affiliation of Defendant's services, and is likely to cause consumers to believe, contrary to the fact, that Defendant's services are offered, authorized, endorsed or sponsored by Partner, and/or that Defendant is in some way affiliated with or sponsored by Partner and/or the Partner Family. Defendant's conduct therefore constitutes trademark infringement in violation of the common law of the State of Texas.

93. Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Partner's prior rights in its PARTNER Marks and with the willful intent to cause confusion and trade on Partner's goodwill.

94. As a direct and proximate result of Defendant's infringing and unlawful acts, Partner has suffered and will continue to suffer damages in an amount to be established at trial.

95. Unless enjoined by this Court, Defendant's infringing and unlawful acts will continue to cause Partner to suffer immediate and irreparable harm for which Partner has no adequate remedy at law.

## COUNT IV
### Unfair Competition Under Texas Common Law

96. Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

97. Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein is unfair competition by passing off.

98. Defendant's use of the Infringing Marks is calculated to deceive, and likely to cause the public to trade with the Defendant when the public intended to and would otherwise have traded with the Partner.

99. Defendant's conduct therefore constitutes unfair competition in violation of the common law of the State of Texas.

## COUNT V
### Unjust Enrichment

100.     Each of the foregoing Paragraphs of this Complaint is hereby incorporated in this Count by reference.

101.     Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Partner's prior rights in its PARTNER Marks and with the willful intent to cause confusion and trade on Partner's goodwill.

102.     As a direct and proximate result of Defendant's infringing and unlawful acts, Partner has suffered and will continue to suffer damages in an amount to be established at trial.

103.     Unless enjoined by this Court, Defendant's infringing and unlawful acts will continue to cause Partner to suffer immediate and irreparable harm for which Partner has no adequate remedy at law.

104.     As a result of Defendant's unauthorized use in commerce of the Infringing Marks, Defendant has wrongfully obtained benefits and gains to which it is not entitled in law or equity to Partner's detriment. Defendant's conduct therefore constitutes unjust enrichment in violation of the common law of the State of Texas.

105.     Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Partner's prior rights in its PARTNER Marks and with the willful intent to cause confusion and trade on Partner's goodwill.

106.     As a direct and proximate result of Defendant's infringing and unlawful acts, Partner has suffered and will continue to suffer damages in an amount to be established at trial.

107.     Unless enjoined by this Court, Defendant's infringing and unlawful acts will continue to cause Partner to suffer immediate and irreparable harm for which Partner has no adequate remedy at law.

## JURY DEMAND

Plaintiff Partner hereby demands this case be tried by a jury on all issues so triable.

## PRAYER FOR RELIEF

For the reasons stated above, Partner prays that this Court:

a.  enter an injunction prohibiting Defendant and its respective officers, directors, agents, servants, employees, attorneys, related companies, licensees, and all persons acting in active concert with, for, by, through, and under any of them, from any and all use of the Infringing Marks, and any other similarly confusing marks, names, and/or logos, or any derivations thereof directly or indirectly, for itself, or through, on behalf of, or in conjunction with the sale or offer of any real estate related services by Defendant;

b.  enter judgment in favor of Partner for actual damages in an amount to be determined by the Court, where such damages are trebled due to Defendant's willful and intentional disregard of Partner's rights, pursuant to at least 15 U.S.C. § 1117 and Texas common law;

c.  enter judgment in favor of Partner for Defendant's profits in an amount to be determined by the Court, where such profits are trebled due to Defendant's acts of willful and intentional disregard of Partner's known rights, pursuant to 15 U.S.C. § 1117 and Texas common law;

d.  award Partner all costs of the action and reasonable attorneys' fees pursuant to the provisions of 15 U.S.C. § 1117 and Texas common law;

e.  award such other relief as the Court deems appropriate.

Date: July 27, 2023                                 Respectfully submitted,

                                                    /s/ John J. Edmonds
                                                    John Edmonds
                                                    Attorney-in-Charge
                                                    Edmonds & Schlather PLLC
                                                    2501 Saltus Street
                                                    Houston, Texas 77003
                                                    Telephone: (713) 234-0044
                                                    Facsimile: (713) 224-6651
                                                    jedmonds@ip-lit.com

                                                    Nicole D. Galli
                                                    *pro hac vice to be filed*
                                                    ND GALLI LAW LLC
                                                    1650 Market Street
                                                    Suite 3600, #00250
                                                    Philadelphia, PA 19103
                                                    Telephone: (215) 525-9580
                                                    Facsimile: (215) 525-9585
                                                    ndgalli@ndgallilaw.com

Alexa Elder
*pro hac vice to be filed*
ND GALLI LAW LLC
9850 Von Allmen Ct,
Suite 201, #40876
Louisville, KY, 40241
Telephone: (502) 308-2932
aelder@ndgallilaw.com